7049684158

Pete Duncan
Macoupin Co. Recorder Carlinville, IL
Doc#: 525099
Receipt #: 21/216
Pages Recorded: 7
Total Fees: $68.00
RHSP Included: $10.00
Date Recorded: 11/27/2012 2:28:46 PM

## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS AND LEASES
## ILLINOIS REAL ESTATE

This Mortgage, Security Agreement and Assignment of Rents and Leases ("Mortgage") is made and entered into by the undersigned borrower(s), guarantor(s) and/or other obligor(s)/pledgor(s) (collectively the "Mortgagor") in favor of U.S. BANK N.A.



Exhibit 1

_____(the "Bank") as of the date set forth below.

### ARTICLE I. MORTGAGE/SECURITY INTEREST

**1.1 Grant of Mortgage/Security Interest.** The Mortgagor hereby mortgages and warrants, conveys, grants a security interest in and collaterally assigns to the Bank the Mortgaged Property (defined below) to secure all of the Mortgagor's Obligations (defined below) to the Bank. The intent of the parties hereto is that the Mortgaged Property secures all Obligations of the Mortgagor to the Bank, whether now or hereafter existing, between the Mortgagor and the Bank or in favor of the Bank, including, without limitation, any note, any loan or security agreement, any lease, any other mortgage, deed of trust or other pledge of an interest in real or personal property, any guaranty, any letter of credit or reimbursement agreement or banker's acceptance, any agreement for any other services or credit extended by the Bank to the Mortgagor even though not specifically enumerated herein and any other agreement with the Bank (together and individually, the "**Loan Documents**"). The parties further intend that this Mortgage shall operate as a security agreement with respect to those portions of the Mortgaged Property which are subject to Article 9 of the Uniform Commercial Code. Notwithstanding anything to the contrary herein, the amount secured hereby shall not exceed $100,000,000.

**1.2 "Mortgaged Property"** means all of the following, whether now owned or existing or hereafter acquired by the Mortgagor, wherever located: all the real estate described below or in **Exhibit A** attached hereto (the "**Land**"), together with all buildings, structures, standing timber, timber to be cut, fixtures, equipment, inventory and furnishings used in connection with the Land and Improvements; all materials, contracts, drawings and personal property relating to any construction on the Land; and all other improvements now or hereafter constructed, affixed or located thereon (the "**Improvements**") (the Land and the Improvements collectively the "**Premises**"); TOGETHER with any and all easements, rights-of-way, licenses, privileges, and appurtenances thereto, and any and all leases or other agreements for the use or occupancy of the Premises, all the rents, issues, profits or any proceeds therefrom and all security deposits and any guaranty of a tenant's obligations thereunder (collectively the "**Rents**"); all awards as a result of condemnation, eminent domain or other decrease in value of the Premises and all insurance and other proceeds of the Premises.

The Land is described as follows (or in Exhibit A hereto if the description does not appear below):

See Attached Exhibit A

Address: 118 West Chestnut, Gillespie, IL

PIN# 10-000-885-00

**1.3 "Obligations"** means all loans by the Bank to Stacey R Piechocinski _____ including those loans evidenced by a note or notes dated 11/27/12 _____, in the initial principal amount(s) of $ 26,400.00 _____ and any extensions, renewals, restatements and modifications thereof and all principal, interest, fees and expenses relating thereto (the "**Note**"); and also means all the Mortgagor's debts, liabilities, obligations, covenants, warranties, and duties to the Bank (plus its affiliates including any credit card debt, but specifically excluding any type of consumer credit), whether now or hereafter existing or incurred, whether liquidated or unliquidated, whether absolute or contingent, whether arising out of the Loan Documents or otherwise, and regardless of whether such Obligations arise out of existing or future credit

granted by the Bank to any Mortgagor, to any Mortgagor and others, to others guaranteed, endorsed or otherwise secured by any Mortgagor or to any debtor-in-possession/successor-in-interest of any Mortgagor, and principal, interest, fees, expenses and charges relating to any of the foregoing, including, without limitation, costs and expenses of collection and enforcement of this Mortgage, attorneys' fees and environmental assessment or remediation costs. The interest rate and maturity of such Obligations are as described in the documents creating the indebtedness secured hereby.

**1.4 Homestead.** The Premises __are not__ the homestead of the Mortgagor. If so, the Mortgagor releases and
(are) (are not)
waives all rights under and by virtue of the homestead exemption laws of the State of Illinois.

**1.5 Revolving Loan.** ☐ If checked here, this Mortgage is given to secure a revolving credit facility and secures not only present indebtedness, but also future advances, whether such future advances are obligatory or are to be made at the option of Bank, or otherwise as are to be made within twenty (20) years following the date hereof. Nothing herein shall be construed as meaning that such revolving indebtedness has a term of twenty (20) years. The amount of revolving indebtedness secured hereby may increase or decrease from time to time, however, the principal amount of such revolving indebtedness shall not at any one time exceed the amount of $100,000,000 plus interest thereon, and other costs, amounts and disbursements as provided herein and in the other Loan Documents.

### ARTICLE II. WARRANTIES AND COVENANTS

In addition to all other warranties and covenants of the Mortgagor under the Loan Documents which are expressly incorporated herein as part of this Mortgage, including the covenants to pay and perform all Obligations, and while any part of the credit granted the Mortgagor under the Loan Documents is available or any Obligations of the Mortgagor to the Bank are unpaid or outstanding, the Mortgagor continuously warrants and agrees as follows:

**2.1 Warranty of Title/Possession.** The Mortgagor warrants that it has sole and exclusive title to and possession of the Premises, excepting only the following "**Permitted Encumbrances**": restrictions and easements of record, and zoning ordinances (the terms of which are and will be complied with, and in the case of easements, are and will be kept free of encroachments), taxes and assessments not yet due and payable and those Permitted Encumbrances set forth on **Exhibit B** attached hereto (except that if no **Exhibit B** is attached, there will be no additional Permitted Encumbrances). The lien of this Mortgage, subject only to Permitted Encumbrances, is and will continue to be a valid first and only lien upon all of the Mortgaged Property.

**2.2 Maintenance; Waste; Alteration.** The Mortgagor will maintain the Premises in good and tenantable condition and will restore or replace damaged or destroyed improvements with items of at least equal utility and value. The Mortgagor will not commit or permit waste to be committed on the Premises. The Mortgagor will not remove, demolish or materially alter any part of the Premises without the Bank's prior written consent, except the Mortgagor may remove a fixture, provided the fixture is promptly replaced with another fixture of at least equal utility. The replacement fixture will be subject to the priority lien and security of this Mortgage.

**2.3 Transfer and Liens.** The Mortgagor will not, without the prior written consent of the Bank, which may be withheld in the Bank's sole and absolute discretion, either voluntarily or involuntarily (a) sell, assign, lease or transfer, or permit to be sold, assigned, leased or transferred, any part of the Premises, or any interest therein; or (b) pledge or otherwise encumber, create or permit to exist any mortgage, pledge, lien or claim for lien or encumbrance upon any part of the Premises or interest therein, except for the Permitted Encumbrances.

**2.4 Escrow.** After written request from the Bank, the Mortgagor will pay to the Bank sufficient funds at such time as the Bank designates, to pay (a) the estimated annual real estate taxes and assessments on the Premises; and (b) all property or hazard insurance premiums when due. Interest will not be paid by the Bank on any escrowed funds. Escrowed funds may be commingled with other funds of the Bank. All escrowed funds are hereby pledged as additional security for the Obligations.

**2.5 Taxes, Assessments and Charges.** To the extent not paid to the Bank under 2.4 above, the Mortgagor will pay before they become delinquent all taxes, assessments and other charges now or hereafter levied or assessed against the Premises, against the Bank based upon this Mortgage or the Obligations secured by this Mortgage, or upon the Bank's interest in the Premises, and deliver to the Bank receipts showing timely payment.

**2.6 Insurance.** The Mortgagor will continually insure the Premises against such perils or hazards as the Bank may require, in amounts, with acceptable co-insurance provisions, not less than the unpaid balance of the Obligations or the full replacement value of the Improvements, whichever is less. The policies will contain an agreement by each insurer that the policy will not be terminated or modified without at least thirty (30) days' prior written notice to the Bank and will contain a mortgage clause acceptable to the Bank; and the Mortgagor will take such other action as the Bank may reasonably request to ensure that the Bank will receive (subject to no other interests) the insurance proceeds from the Improvements. The Mortgagor hereby assigns all insurance proceeds to and irrevocably directs, while any Obligations

17141L  Page 2 of 6

remain unpaid, any insurer to pay to the Bank the proceeds of all such insurance and any premium refund; and authorizes the Bank to endorse the Mortgagor's name to effect the same, to make, adjust or settle, in the Mortgagor's name, any claim on any insurance policy relating to the Premises. The proceeds and refunds will be applied in such manner as the Bank, in its sole and absolute discretion, determines to rebuilding of the Premises or to payment of the Obligations, whether or not then due and payable.

**2.7 Condemnation.** Any compensation received for the taking of the Premises, or any part thereof, by a condemnation proceeding (including payments in compromise of condemnation proceedings), and all compensation received as damages for injury to the Premises, or any part thereof, shall be applied in such manner as the Bank, in its sole and absolute discretion, determines to rebuilding of the Premises or to payment of the Obligations, whether or not then due and payable. Mortgagor hereby assigns to Bank any claims for compensation for a taking by eminent domain of all or a part of the Mortgaged Property.

**2.8 Environmental Matters.** Except as specifically disclosed by Mortgagor to Bank in writing prior to the execution of this Mortgage, Mortgagor represents and warrants as follows. There exists no uncorrected violation by the Mortgagor of any federal, state or local laws (including statutes, regulations, ordinances or other governmental restrictions and requirements) relating to the discharge of air pollutants, water pollutants or process waste water or otherwise relating to the environment or Hazardous Substances as hereinafter defined, whether such laws currently exist or are enacted in the future (collectively "**Environmental Laws**"). The term "**Hazardous Substances**" will mean any hazardous or toxic wastes, chemicals or other substances, the generation, possession or existence of which is prohibited or governed by any Environmental Laws. The Mortgagor is not subject to any judgment, decree, order or citation, or a party to (or threatened with) any litigation or administrative proceeding, which asserts that the Mortgagor (a) has violated any Environmental Laws; (b) is required to clean up, remove or take remedial or other action with respect to any Hazardous Substances (collectively "**Remedial Action**"); or (c) is required to pay all or a portion of the cost of any Remedial Action, as a potentially responsible party. Except as disclosed on the Borrower's environmental questionnaire provided to the Bank, there are not now, nor to the Mortgagor's knowledge after reasonable investigation have there ever been, any Hazardous Substances (or tanks or other facilities for the storage of Hazardous Substances) stored, deposited, recycled or disposed of on, under or at any real estate owned or occupied by the Mortgagor during the periods that the Mortgagor owned or occupied such real estate, which if present on the real estate or in soils or ground water, could require Remedial Action. To the Mortgagor's knowledge, there are no proposed or pending changes in Environmental Laws which would adversely affect the Mortgagor or its business, and there are no conditions existing currently or likely to exist while the Loan Documents are in effect which would subject the Mortgagor to Remedial Action or other liability. The Mortgagor currently complies with and will continue to timely comply with all applicable Environmental Laws; and will provide the Bank, immediately upon receipt, copies of any correspondence, notice, complaint, order or other document from any source asserting or alleging any circumstance or condition which requires or may require a financial contribution by the Mortgagor or Remedial Action or other response by or on the part of the Mortgagor under Environmental Laws, or which seeks damages or civil, criminal or punitive penalties from the Mortgagor for an alleged violation of Environmental Laws. In the event of any such circumstance or condition, the Mortgagor agrees, at its expense and at the request of the Bank, to permit an environmental audit solely for the benefit of the Bank, to be conducted by the Bank or an independent agent selected by the Bank and which may not be relied on by the Mortgagor for any purpose. This provision shall not relieve the Mortgagor from conducting its own environmental audits or taking any other steps necessary to comply with Environmental Laws.

The Mortgagor hereby represents and warrants that the execution and delivery of this Mortgage is not a transfer of "real property," as "real property" is defined in the Illinois Responsible Property Transfer Act (765 ILCS 90/1 et seq.), as said Act may be amended from time to time, or, if the execution and delivery of this Mortgage is "real property," as defined in said Act, then the Mortgagor hereby represents and warrants that it has complied with the provisions thereof.

**2.9 Assignments.** The Mortgagor will not assign, in whole or in part, without the Bank's prior written consent, the rents, issues or profits arising from the Premises.

**2.10 Right of Inspection.** The Bank may at all reasonable times enter and inspect the Premises.

**2.11 Waivers by Mortgagor.** To the greatest extent that such rights may then be lawfully waived, the Mortgagor hereby agrees for itself and any persons claiming under the Mortgage that it will waive and will not, at any time, insist upon or plead or in any manner whatsoever claim or take any benefit or advantage of (a) any exemption, stay, extension or moratorium law now or at any time hereafter in force; (b) any law now or hereafter in force providing for the valuation or appraisement of the Premises or any part thereof prior to any sale or sales thereof to be made pursuant to any provision herein contained or pursuant to the decree, judgment or order of any court of competent jurisdiction; (c) to the extent permitted by law, any law now or at any time hereafter made or enacted granting a right to redeem from foreclosure or any other rights of redemption in connection with foreclosure of this Mortgage; (d) any statute of limitations now or at any time hereafter in force; or (e) any right to require marshalling of assets by the Bank.

**2.12 Assignment of Rents and Leases.** The Mortgagor assigns and transfers to the Bank, as additional security for

the Obligations, all right, title and interest of the Mortgagor in and to all leases which now exist or hereafter may be executed by or on behalf of the Mortgagor covering the Premises and any extensions or renewals thereof, together with all Rents, it being intended that this is an absolute and present assignment of the Rents. Notwithstanding that this assignment constitutes a present assignment of leases and rents, the Mortgagor may collect the Rents and manage the Premises, but only if and so long as a default has not occurred. If a default occurs, the right of Mortgagor to collect the Rents and to manage the Premises shall thereupon automatically terminate and such right, together with other rights, powers and authorizations contained herein, shall belong exclusively to the Bank. This assignment confers upon the Bank a power coupled with an interest and cannot be revoked by the Mortgagor. Upon the occurrence of a default, the Bank, at its option without notice and without seeking or obtaining the appointment of a receiver or taking actual possession of the Premises may (a) give notice to any tenant(s) that the tenant(s) should begin making payments under their lease agreement(s) directly to the Bank or its designee; (b) commence a foreclosure action and file a motion for appointment of a receiver; or (c) give notice to the Mortgagor that the Mortgagor should collect all Rents arising from the Premises and remit them to the Bank upon collection and that the Mortgagor should enforce the terms of the lease(s) to ensure prompt payment by tenant(s) under the lease(s). All Rents received by the Mortgagor shall be held in trust by the Mortgagor for the Bank. All such payments received by the Bank may be applied in any manner as the Bank determines to payments required under this Mortgage, the Loan Documents and the Obligations. The Mortgagor agrees to hold each tenant harmless from actions relating to tenant's payment of Rents to the Bank.

**2.13 Fixture Filing.** From the date of its recording, this Mortgage shall be effective as a financing statement filed as a fixture filing with respect to the Improvements and for this purpose the name and address of the debtor is the name and address of the Mortgagor as set forth in this Mortgage and the name and address of the secured party is the name and address of the Bank as set forth in this Mortgage. The Mortgaged Property includes goods which are or are to become fixtures.

## ARTICLE III. RIGHTS AND DUTIES OF THE BANK

In addition to all other rights (including setoff) and duties of the Bank under the Loan Documents which are expressly incorporated herein as a part of this Mortgage, the following provisions will also apply:

**3.1 Bank Authorized to Perform for Mortgagor.** If the Mortgagor fails to perform any of the Mortgagor's duties or covenants set forth in this Mortgage, the Bank may perform the duties or cause them to be performed, including, without limitation, signing the Mortgagor's name or paying any amount so required, and the cost, with interest at the default rate set forth in the Loan Documents, will immediately be due from the Mortgagor to the Bank from the date of expenditure by the Bank to date of payment by the Mortgagor, and will be one of the Obligations secured by this Mortgage. All acts by the Bank are hereby ratified and approved, and the Bank will not be liable for any acts of commission or omission, nor for any errors of judgment or mistakes of fact or law.

## ARTICLE IV. DEFAULTS AND REMEDIES

The Bank may enforce its rights and remedies under this Mortgage upon default. A default will occur if the Mortgagor fails to comply with the terms of any Loan Documents (including this Mortgage or any guaranty by the Mortgagor) or a demand for payment is made under a demand loan, or the Mortgagor defaults on any other mortgage affecting the Land, or if any other obligor fails to comply with the terms of any Loan Documents for which the Mortgagor has given the Bank a guaranty or pledge. Upon the occurrence of a default, the Bank may declare the Obligations to be immediately due and payable.

**4.1 Cumulative Remedies; Waiver.** In addition to the remedies for default set forth in the Loan Documents, including acceleration, the Bank upon default will have all other rights and remedies for default available by law or equity including foreclosure sale of the Mortgaged Property pursuant to this Mortgage and applicable law, the extinguishment of the right, title and interest of the Mortgagor in the Mortgaged Property and the rights of all claiming by, through or under the Mortgagor, and the application of the proceeds of such sale to satisfy the Obligations. The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies which the Bank would otherwise have. With respect to such rights and remedies:

(a) **Receiver; Mortgagee-in-Possession.** Upon the commencement or during the pendency of any action to foreclose this Mortgage, the Bank will be entitled, as a matter of right, without notice or demand and without giving bond or other security, and without regard to the solvency or insolvency of the Mortgagor or to the value of the Premises, to have a receiver appointed for all or any part of the Premises, which receiver will be authorized to collect the rents, issues and profits of the Premises during the pendency of such foreclosure action, and until discharged, and to hold and apply such rents, issues and profits, when so collected, as the court will from time to time direct. Without limitation of the foregoing, the Mortgagor hereby authorizes the Bank to be placed in possession of the Premises during foreclosure, whether the Premises are residential or not, and, for so long as the Bank shall remain in possession of the Premises, the Bank shall have the power and authority to operate, manage and control the Premises, including, without limitation, the right to receive the rents, issues and profits of the Premises, perform all maintenance and make all repairs

and replacements, enter into leases, and amend, cancel, renew, modify and terminate the same.

(b) **Agreement to State Foreclosure Statutes.** The Mortgagor agrees that in the event of foreclosure of this Mortgage, the Mortgagor will be bound by the provisions of Section 735 ILCS 5/15-1101 et seq., as the same may be amended or renumbered from time to time, whichever may be applicable to the Premises, permitting the Bank (at its option) to waive the right to a deficiency judgment and shorten the length of the redemption period in the event of foreclosure.

(c) **Waiver by the Bank.** The Bank may permit the Mortgagor to attempt to remedy any default without waiving its rights and remedies hereunder, and the Bank may waive any default without waiving any other subsequent or prior default by the Mortgagor. Furthermore, delay on the part of the Bank in exercising any right, power or privilege hereunder or at law will not operate as a waiver thereof, nor will any single or partial exercise of such right, power or privilege preclude other exercise thereof or the exercise of any other right, power or privilege. No waiver or suspension will be deemed to have occurred unless the Bank has expressly agreed in writing specifying such waiver or suspension.

(d) **Attorneys' Fees and Other Costs.** Attorneys' fees and other costs incurred in connection with foreclosure of this Mortgage may be recovered by the Bank and included in any judgment of foreclosure.

### ARTICLE V. MISCELLANEOUS

In addition to all other miscellaneous provisions under the Loan Documents which are expressly incorporated as a part of this Mortgage, the following provisions will also apply:

**5.1 Term of Mortgage.** The lien of this Mortgage shall continue in full force and effect until this Mortgage is released.

**5.2 Time of the Essence.** Time is of the essence with respect to payment of the Obligations, the performance of all covenants of the Mortgagor and the payment of taxes, assessments, and similar charges and insurance premiums.

**5.3 Subrogation.** The Bank will be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the proceeds of the Note or other advances by the Bank, in which event any sums otherwise advanced by the Bank shall be immediately due and payable, with interest at the default rate set forth in the Loan Documents from the date of advance by the Bank to the date of payment by the Mortgagor, and will be one of the Obligations secured by this Mortgage.

**5.4 Choice of Law.** Foreclosure of this Mortgage will be governed by the laws of the state in which the Mortgaged Property is located. For all other purposes, the choice of law specified in the Loan Documents will govern.

**5.5 Severability.** Invalidity or unenforceability of any provision of this Mortgage shall not affect the validity or enforceability of any other provision.

**5.6 Entire Agreement.** This Mortgage is intended by the Mortgagor and the Bank as a final expression of this Mortgage and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Mortgage. No parol evidence of any nature shall be used to supplement or modify any terms.

**5.7 Joint Liability; Successors and Assigns.** If there is more than one Mortgagor, the liability of the Mortgagors will be joint and several, and the reference to "Mortgagor" shall be deemed to refer to each Mortgagor and to all Mortgagors. The rights, options, powers and remedies granted in this Mortgage and the other Loan Documents shall extend to the Bank and to its successors and assigns, shall be binding upon the Mortgagor and its successors and assigns, and shall be applicable hereto and to all renewals, amendments and/or extensions hereof.

**5.8 Indemnification.** Except for harm arising from the Bank's willful misconduct, the Mortgagor hereby indemnifies and agrees to defend and hold the Bank harmless from any and all losses, costs, damages, claims and expenses (including, without limitation, attorneys' fees and expenses) of any kind suffered by or asserted against the Bank relating to claims by third parties arising out of the financing provided under the Loan Documents or related to the Mortgaged Property (including, without limitation, the Mortgagor's failure to perform its obligations relating to Environmental Matters described in Section 2.8 above or the exercise by the Bank of any of its powers, rights, and remedies under this Mortgage). This indemnification and hold harmless provision will survive the termination of the Loan Documents and the satisfaction of this Mortgage and Obligations due the Bank.

**5.9 Notices.** Notice of any record shall be deemed delivered when the record has been (a) deposited in the United States Mail, postage pre-paid, (b) received by overnight delivery service, (c) received by telex, (d) received by telecopy, (e) received through the internet, or (f) when personally delivered.

**5.10 Waiver of Homestead and Redemption.** Mortgagor hereby waives all right of homestead exemption in the Mortgaged Property and waives all right of reinstatement and redemption or equity of redemption on behalf of Mortgagor and on behalf of all other persons acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage.

5.11 **Copy.** The Mortgagor hereby acknowledges the receipt of a copy of this Mortgage, together with a copy of each promissory note secured hereby, and all other documents executed by the Mortgagor in connection herewith.

5.12 **Riders.** The rider(s) attached hereto and recorded together with this Mortgage are hereby fully incorporated into this Mortgage. [Check applicable box(es)]   ☐ Condominium Rider   ☐ Second Mortgage Rider   ☐ Construction Loan Rider   ☐ Other(s) (Specify) _____

IN WITNESS WHEREOF, the undersigned has/have executed this MORTGAGE as of __NOVEMBER 27, 2012__.

(Individual Mortgagor)
_Stacey Piechocinski_ (signature)
Mortgagor Name
Stacey R Piechocinski

(Individual Mortgagor)
Mortgagor Name

Mortgagor Name (Organization): N/A
a _____
By _____
Name and Title: N/A
By _____
Name and Title: N/A

(Mortgagor Address)
506 E Clark
Litchfield, IL  62056

(Bank Address)
U.S. BANK N.A.
400 CITY CENTER
OSHKOSH, WI  54901

STATE OF _Illinois_
COUNTY OF _Macoupn_   } ss.

This instrument was acknowledged before me on _November 21, 2012_ by Stacey R Piechocinski [Name(s) of Person(s)] as single individual (Type of authority, if any, e.g., officer, trustee; if an individual, state "a married individual" or "a single individual") of _N/A_ (Name of entity on whose behalf the document was executed; use N/A if individual)

(Notarial Seal)
OFFICIAL SEAL
PHILIP A WILLIAMS
Notary Public - State of Illinois
My Commission Expires Apr 5, 2014

Printed Name: _Philip A. Williams_
Notary Public, State of: _Illinois_
My commission expires: _April 5 2014_

This instrument was drafted by _Philip A Williams_ (name) on behalf of

After recording return to _U.S. BANK N.A._ (name)

COLLATERAL DEPARTMENT
P.O. BOX 3487   OSHKOSH WI  54903-3487
(address)

17141L

Page 6 of 6

Return to US Bank
240 E. Main

**EXHIBIT A TO MORTGAGE**
(Legal Description)

Mortgagor: Stacey R Piechocinski

Bank: U.S. BANK N.A.

Legal Description of Land:

The East Twenty-two (22) feet of Lot Numbered Four (4) in Block Lettered "I" of the Original Plat of the Town, Now City, of Gillespie, in the County of Macoupin and State of Illinois, said tract being more particularly described by metes and bounds as follows:

Beginning at the Northeast corner of said Lot Numbered Four (4) in Block Lettered "I" and running thence in a Southwesterly direction along the South line of Chestnut Street, a distance of Twenty-two (22) feet, Thence in a Southeasterly direction in a line parallel with the West line of Macoupin Street, a distance of One Hundred Thirty-two (132) feet; Thence in a Northeasterly direction, in a line parallel with the South line of Chestnut Street and along the South line of said Lot Number Four (4), a distance of Twenty-two (22) feet to the Southeast corner of said Lot; Thence along the East line of said Lot, a distance of One Hundred Thirty-two (132) feet to the place of beginning.

Situated in the City of Gillespie, County of Macoupin and in the State of Illinois.

10-000-885-00